JOHN S. COTTON *vs.* THE POCASSET MANUFACTURING COMPANY.

A right to empty a town drain upon the land of an individual cannot be acquired by twenty years' use, unless the drain be one and the same, and the use thereof uninterrupted during that number of years : If the drain, during those years, be enlarged, deepened, and varied in its course and termination, the town cannot acquire such right, as against the owner of the land, by using the drain less than twenty years after it is thus enlarged and altered.

So a person who enters a drain from his cellar into a town drain which is afterwards enlarged, deepened, and varied in its course and termination, and who subsequently deepens his cellar, and lays the drain therefrom deeper than it was before, and enters it into the altered town drain, cannot acquire a right thus to drain his cellar, by a use of the town drain for less than twenty years after it is altered.

*It seems,* that when a cellar is flowed by water which is set back through the drain therefrom, by the raising of a mill dam, the remedy, if any, of the owner of the cellar, is under the mill act, (Rev. Sts. *c.* 116,) and not by action at common law.

When a drain is made to discharge itself upon private land, without the owner's consent, and he has not acquiesced for twenty years, he is not liable to an action at law, nor to the process prescribed by the mill act, for raising a mill dam on his land, and thereby obstructing the drain and flowing the cellars connected with it

THIS was an action of trespass upon the case, in which the plaintiff's declaration alleged that the defendants, on the 15th of September 1844, and on divers other days afterwards, took up and removed a drain or sewer leading from the plaintiff's cellar, under Main Street in Fall River, to and through the defendants' close, and erected the foundation of a building across the place where said drain or sewer ran, and placed earth and rubbish there, so as to prevent water from running off from the plaintiff's cellar, and changed the position of parts of a certain dam, waste-way and floom, and so placed earth, stones, timber, planks, boards and other materials, as to cause the water of a certain mill pond to flow, through said drain or sewer, into the plaintiff's cellar.

The trial was before *Hubbard*, J. and all the testimony in the case was reported. So much of it as is necessary to an understanding of the points decided by the court is contained in the following statement:

The plaintiff was the owner of a store standing in the northeast corner made by the intersection of Main Street by Bedford Street, in Fall River. The defendants were the owners of a mill dam, of which Main Street formed a part, flowing water on the eastern side of that street. By reason of the defective structure of this dam, the waters percolated, in considerable quantities, through its foundation.

It was in evidence that, after the town had widened Main Street, the defendants, in the spring of 1844, erected a block of stores and tenements upon their close, on the westerly side of that street, and so laid the foundation of said block upon the line of that side of said street, and so prepared the ground of said street, in front of said block, as to make a tight dam for their mill pond, and permanently to prevent the flowing of water from any drains which had conducted water from Bedford Street, across Main Street, upon their close.

There was evidence tending to prove that there was an ancient town drain running, from a point a few feet in front of the plaintiff's store, southward across Bedford Street, and thence continuing southwesteriy across Main Street, to the

defendants' close, through which the water from those streets ran off; and that about 20 years before the commencement of this action, a drain, from the cellar of the plaintiff's store, was made into that drain.

It was also in evidence that the part of the town drain, which crosses Main Street, was found, in 1830, to be filled up, and that another town drain was then made instead, and was made wider and deeper than the former one, and was varied from it, in its course and in its termination: That in 1843, the plaintiff made his cellar from 10 to 12 inches deeper than it was before, and at the same time increased the depth of the drain from it to the town drain ; and that, but for these changes in the depth of his cellar and drain, the water from the pond of the defendants would not have flowed into his cellar.

The defendants contended, that there was not evidence to show the existence of any one drain, passing across Main Street, for the period of twenty years, with which the plaintiff's drain had been connected. And the jury were instructed that, in order to find for the plaintiff, they must be satisfied that there had been one and the same drain across Main Street uninterruptedly for twenty years before this action was brought, and that the plaintiff's drain was connected with that drain ; that if there was a drain, before the town drain that was made in 1830, yet if the latter drain was made wider and deeper than the former, breaking it up, or essentially varying its termination upon the defendants' land, then it was not, in legal effect, the same drain ; and that there must be a constant, unbroken use of substantially the same drain, by the town or individuals, for twenty years, in order to give a right by adverse enjoyment.

The defendants also contended, that if the water flowed into the plaintiff's cellar, by means of his deepening the cellar and the drain in the street between the cellar and the town drain in Bedford Street, in 1843, without license of the town, the plaintiff was not entitled to recover, and that any right which the plaintiff might have to enter his drain into

the town drain, and to pass the water from his cellar through said drain upon the defendants' land, was terminated by the act of the town in building a new drain and abandoning the old drain ; and also, that if the water from the plaintiff's cellar was let into a town drain, and through that upon the defendants' land, without the defendants' knowledge, then no adverse right was acquired. But the judge, for the purposes of the trial, instructed the jury, that if the town drain under Bedford and Main Streets had existed, essentially in the same place and state, for twenty years before the plaintiff's action was commenced, the town had acquired a right to have their drain empty itself upon the defendants' land, and that the plaintiff had a right to enter the drain from his cellar into the town drain, and to have the water run through it upon the land of the defendants, although the plaintiff's drain had not existed twenty years. And the jury were also instructed, that if the flowing of the water into the plaintiff's cellar was caused by the removal of the bulk head or dam westward of its former position, or by the filling or building of the street, and these were done by the town, or the agents of the town, then the defendants were not liable.

The defendants furthermore contended, that as it appeared that if any thing had been done by the defendants to cause the water to flow into the plaintiff's cellar, it was by a mill dam erected, continued and maintained for the purpose of raising water for the working of a water mill, the remedy of the plaintiff, if any, must be sought under the provisions concerning flowing, contained in the Rev. Sts. *c.* 116. But the judge, for the purposes of the trial, instructed the jury, that this action was the proper remedy for the plaintiff.

A verdict being returned for the plaintiff, the defendants moved for a new trial, because the verdict was against the evidence. Exceptions were also taken to the instructions given to the jury.

*Holmes & Battelle*, for the defendants.

*Eliot*, for the plaintiff.

WILDE, J.   The defendants move for a new trial on several

grounds. In the first place, it is contended that the instructions to the jury were erroneous, as to the plaintiff's right to drain the water from his cellar into the town drain. The instructions were, that if the town drain had existed essentially in the same place and state, for a period of twenty years before this action was commenced, the town had gained a right to have their drain empty itself upon the defendants' land, and that the plaintiff would have the right to enter the drain from his cellar into the town drain, and to have the water run through it, upon the land of the defendants, although the plaintiff's drain had not existed for twenty years.

These instructions, we think, were incorrect, and were material to the issue to be tried. It is a well settled rule of law, that if a person has a right of way over the land of another, to a particular close, he cannot enlarge it and extend it to other closes. It was so decided in *Davenport* v. *Lamson*, 21 Pick. 72. The same principle manifestly applies to the present case. If the plaintiff has acquired the right in question, it must be in the right of the town; and the town clearly have acquired no · such right. For it is plain, from the evidence, .that a material alteration has been recently made in the plaintiff's drain, without which his cellar would not have been flowed. Nothing short of an acquiescence of the defendants, for twenty years, in such an alteration, would authorize the presumption of a grant, either in favor of the town or the plaintiff. We are therefore of opinion that, on this ground, the defendants are entitled to a new trial.

We are also of opinion that the verdict is against the evidence in respect to the town drain. It appears from the evidence, that within twenty years before the plaintiff's action was commenced, a new drain was opened by the town, which was made larger and deeper than the former drain, and partly in a different place. On this point, the jury were instructed " that in order to find for the plaintiff, they must be satisfied that there had been one and the same drain across Main Street, uninterruptedly, for a period of twenty years, before the action

was brought, and that the plaintiff's drain was connected with that drain." This instruction was unquestionably correct; and in conformity to it, the evidence does not support the verdict.

Another ground of defence is relied on by the defendants, which we are strongly inclined to think would be decisive in their favor, if the other grounds should fail.

It is contended that the plaintiff's remedy, if he has been injured, is under the mill act, (Rev. Sts. *c.* 116,) the first section of which authorizes the erection of a water mill, and a dam to raise the water for working it; and the fourth section of which provides, that any person, whose land is overflowed, or otherwise injured by such dam, may obtain compensation therefor, in the manner provided in that act. This case, if the plaintiff is entitled to any remedy, comes certainly within the words of the statute; and we perceive no reason to doubt that it is within its true meaning. We are, however, of opinion that, upon the evidence reported, the plaintiff is not entitled to an action in any form.          *New trial granted.*